FILED

OCT - 9 2026

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY ______________________
DEPUTY CLERK

MAG HOLDINGS TRUST FOR M.L. WICKS
Beneficiary of the Southern Pacific Railroad
MARIANO ESCOBEDO 134 CP.22704.
LERDO DE TEJADA REFORMA
(ROSARITO). C.P. 22704 ROSARITO, BC.
646 126
**52 ~~126--646~~-2159 and 213 314 9182**

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA SACRAMENTO DIVISION**

MAG HOLDINGS TRUST. CASE NUMBER .: 2:26CV 3531 DAD AC (PS)

(On Behalf of M.L. Wicks, Beneficiary of. MEMORANDUM OF POINTS OF

the Southern Pacific Railroad), AUTHORITIES

Plaintiff,

v.

COMMUNITY REDEVELOPMENT AGENCY OF THE CITY OF LOS ANGELES, CALIFORNIA; CITY OF LA VERNE, CALIFORNIA; MAGUIRE PROPERTIES ONE BUNKER HILL; KANE, BALLMER & BERKMAN; QUALITY LOAN SERVICE CORPORATION; SAN PABLO AND TULARE RAILROAD COMPANY; SOUTHERN PACIFIC RAILROAD COMPANY; MAGUIRE PROPERTIES REGENT SQUARE, LLC; GILCHRIST & RUTTER, PROFESSIONAL CORPORATION; ROBERT F. MAGUIRE III; JAMES A. THOMAS; and NELSON C. RISING ESTATE, MAGUIRE PROPERTIES REGENT SQUARE LLC 1733 OCEAN AVE, Marjorie Nemzura, individually, FIDELITY NATIONAL TITLE INSURANCE COMPANY, KNOWN AS FMR and Does 1 through 100, inclusive,

Defendants.

Case No. **21STCP05172** (Cross-Reference)ROBERT F.MAGUIRE III EIN

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

## INTRODUCTION

Plaintiff Mag Holdings Trust, acting as the sole authorized representative, assignee, and successor in interest to the ancestral land patents, unexpired ninety-nine year commercial

ORIGINAL

leaseholds, and structural infrastructure titles of Moses Langley Wicks and Jennie L. Wicks, submits this Memorandum of Points and Authorities in support of its Ex Parte Application for a Temporary Restraining Order. Plaintiff seeks an immediate judicial decree halting, suspending, and freezing all non-judicial foreclosure, trustee sale, eviction, or title transfer operations concerning the real property located at 836 Mariposa Avenue, Rodeo, California 94572, also described as Lots 14 and 15, Block 28E of the Rodeo Subdivision. This emergency application is necessary to restrain Defendant Quality Loan Service Corporation from moving forward with Trustee Sale Number CA-26-1034761-NJ and to freeze the upcoming sixty-to-ninety-day title acquisition pipeline leading to the federal government.

The underlying four hundred forty-one thousand eight hundred forty-nine dollar residential deed of trust executed by record borrower Omar A. Iddeen is a junior instrument that remains subordinate to the prior-recorded, unexpired ninety-nine year commercial leasehold infrastructure rights vested in Plaintiff. Despite the priority of the Trust's covenants, Defendant Quality Loan Service Corporation and the associated municipal and title entities have moved forward to execute a foreclosure that will irreparably disrupt the status quo, result in wrongful property deprivation, and cause irreversible damage to the trust estate before a regularly noticed motion can be heard. Therefore, temporary injunctive relief under Federal Rule of Civil Procedure 65 and Local Rule 231 is urgently required to maintain the status quo pending a comprehensive evidentiary review of the records.

## STATEMENT OF FACTS

This litigation arises out of a coordinated, multi-generational effort by the named municipal defendants, real estate developers, and corporate title insurers to systematically conceal, convert, and overlay ancestral land infrastructure assets originally established by Moses Langley Wicks and Jennie L. Wicks. During the late nineteenth and early twentieth centuries,

Moses Langley Wicks consolidated an unbroken industrial and transit corridor running from the deep-water shipping channels of San Francisco and Rodeo, across the San Pablo and Tulare Extension Railroad right-of-ways, through the Mandeville Island agricultural grids, over the Tehachapi Pass mineral networks, and down into the Los Angeles Union Station terminal grid. Following the passings of Moses Langley Wicks Sr. in 1919 and Moses Langley Wicks Jr. in 1922, the family trustee, Frank L. Butler, an attorney, alongside the law firm of Chapman & Chapman, preserved these infrastructure corridors by executing long-term ninety-nine year commercial leaseholds, utility overlays, and water distribution rights that run with the land. [3]

Plaintiff alleges that the named developer defendants, acting in concert with specialized municipal counsel Kane, Ballmer & Berkman and the Community Redevelopment Agency, executed unauthorized condemnation actions and eminent domain filings, including Los Angeles Superior Court Case Number C549524 and related cases EAC7419 and C549423, to acquire land rights over the original Wicks subdivisions. In the course of those proceedings, the defendants deposited and subsequently withdrew millions of dollars in registry funds without providing required notice to the lawful trust protectors, using those transactions to overlay modern commercial skyscrapers directly over the prior-recorded Wicks infrastructure overlays. Furthermore, Defendant Marjorie Nemzura, acting on behalf of Fidelity National Title Insurance Company, systematically dissolved the Los Angeles Title Insurance Company, formerly located at 433 Spring Street and 333 South Grand Avenue, without notice in October 2001, effectively concealing approximately twelve fraudulent insurance claims with non-existent claim numbers covering a one-mile radius of Bunker Hill.

To insulate these commercial developments from ancestral trust accounting, the defendants' legal counsel, Gilchrist & Rutter, orchestrated the interception and removal of seven foundational probate cases belonging to the M.L. Wicks and Jennie L. Wicks estates from the

Los Angeles Superior Court archives, diverting them to the un-indexed storage vaults at the Seaver Center for Western History Research at Exposition Park. Prior to his death, Robert F. Maguire III signed over these commercial real estate portfolios, built upon the unexpired Wicks infrastructure overlays, to global asset management conglomerates including Brookfield to shield the holdings from ancestral accounting, while concurrently maintaining corporate Dun & Bradstreet registries at 901 Oriole Way, Los Angeles, which residential asset was subsequently sold to actress Jennifer Aniston for twenty-one million dollars. Defendant Quality Loan Service Corporation has now initiated wrongful non-judicial foreclosure proceedings under Trustee Sale Number CA-26-1034761-NJ against the Subject Property situated at 836 Mariposa Avenue, Rodeo, California 94572, which action represents an unlawful attempt to clear and extinguish the prior-recorded ninety-nine year commercial transit leaseholds held by the Trust.

## ARGUMENT

### I. THE LEGAL STANDARD FOR AN EX PARTE TEMPORARY RESTRAINING ORDER IS SATISFIED

Under Federal Rule of Civil Procedure 65(b) and Local Rule 231 of the Eastern District of California, a temporary restraining order is an extraordinary remedy designed to preserve the status quo and prevent immediate, irreparable harm just so long as is necessary to hold a preliminary injunction hearing. The standard for issuing a temporary restraining order is identical to the standard for a preliminary injunction, requiring the moving party to demonstrate that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest.

As set forth below, Plaintiff satisfies each element of this legal standard. The sudden acceleration of the non-judicial foreclosure sale and the sixty-to-ninety-day federal conveyance pipeline created by the defendants leaves the Trust with no other legal alternative to protect its

ancestral land holdings.

II. PLAINTIFF HAS DEMONSTRATED A HIGH LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiff has established a strong likelihood of success on the merits regarding its claims for quiet title, declaratory relief, and fraudulent conversion. Under California law, a quiet title action may be brought to establish an interest in real property against any adverse claims. The unexpired ninety-nine year commercial transit leaseholds and prior-recorded land patents held by Mag Holdings Trust constitute a superior interest that runs with the land, meaning that any subsequent residential mortgage instruments are legally subordinate to the Trust's priority. Furthermore, the defense arguments regarding municipal redevelopments and title transfers are undermined by the documented concealment of the seven original ancestral probate files. Under long-standing California Supreme Court precedent, including Wicks v. Rampart Boulevard Co. (176 Cal. 140), title actions are governed strictly by the official recorded map subdivisions and the mutual intent of the transacting parties. Because the defendants' underlying real estate portfolios and modern deeds of trust rely upon altered registries and incomplete eminent domain transactions executed without proper notice to the trust protectors, they cannot extinguish the prior-recorded master covenants vested in Plaintiff.

**III. PLAINTIFF WILL SUFFER IMMEDIATE AND IRREPARABLE HARM IN THE ABSENCE OF A STAY**

It is well-established under federal and state jurisprudence that real property is inherently unique, and that the loss of an interest in land or the wrongful deprivation of real property rights constitutes per se irreparable harm that cannot be adequately compensated by monetary damages alone. If Defendant Quality Loan Service Corporation is permitted to proceed with Trustee Sale Number CA-26-1034761-NJ, the title to the Rodeo property will be altered, and the sixty-to-ninety-day federal acquisition pipeline will be finalized.

This impending conveyance to the federal government will permanently disrupt the status quo

and cloud the historic trust title across Contra Costa County. Once title is transferred to an institutional or federal entity, the practical ability of the Trust to recover its physical right-of-way assets and enforce its ninety-nine year utility leaseholds will be severely compromised. Immediate emergency intervention is therefore crucial to hold the property lines intact while the **IV. THE LAWSUIT BALANCES EQUITIES AND SERVES THE PUBLIC INTERES**court reviews the subpoenaed evidence.

The balance of hardships tips heavily in favor of granting the temporary restraining order. If the court issues the requested stay, the defendants will suffer no permanent harm; they will merely be delayed for a short period from conducting a non-judicial auction, and their financial positions are protected by the requirement of a security bond under Rule 65(c). Conversely, if the stay is denied, Plaintiff will suffer an immediate and irreversible loss of its real property rights before having an opportunity to present its full chain-of-title evidence.

The public interest is also directly served by maintaining the integrity of the public land registries and ensuring that corporate entities do not utilize concealed archives to bypass ancestral property rights. A temporary ninety-day freeze is necessary to allow the court to receive and evaluate the historical case portfolios and maps currently subpoenaed from the Seaver Center for Western History Research and the Huntington Botanical Gardens, ensuring a fair and lawful determination of property priority.

**CONCLUSION**

For the foregoing reasons, Plaintiff Mag Holdings Trust respectfully requests that this Court grant its Ex Parte Application, issue the proposed Temporary Restraining Order to freeze all foreclosure and title transfers concerning the property at 836 Mariposa Avenue, Rodeo, California, and enter an Order to Show Cause why a Preliminary Injunction should not be Granted.

Dated: October 7, 2026

Respectfully submitted,

By: ______________________________

nMAG HOLDINGS TRUST

MAG HOLDING TRUST FOR ML WICKS
BENEFICARY OF SOUTHEN PACIFIC RAILROAD
MARIANO ESCOBEDO 134 CP, 22704
LERDO DE TEJADA REFORMA
ROSARITO CP 22704 ROSARITO B,C
046 126-2154- 213 314 9172

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAG HOLDING TRUST FOR MLWICKS, BEN OF SOUTHEN PACIFIC. MICHELE A. GARDNER. Plaintiff, | No. |
| v. | |
| COMMUNITY REDEVELOPMENT AGENCY OF LOS ANGELES CALIFORNIA Defendant. | LETTER REGARDING HAGUE CONVENTION. REQUIREMENTS. |

ORIGINAL TO CLERK OF COURT

# LETTER REGARDING HAGUE CONVENTION REQUIREMENTS

Date: October 7, 2026

To: Clerk of the Court / Process Server Division United States District Court for the Eastern District of California.
501 I Street, Room 4-200Sacramento, California 95814

Re: Cross-Border Treaty Compliance and Service Requirements under the Hague Service Convention

To Whom It May Concern,

This correspondence provides formal notification and procedural guidance regarding the required service of process mechanisms for this matter. Because the administrative operations and corresponding parties reside within the United Mexican States, all service actions must strictly comply with the multilateral treaty obligations of the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the Hague Service Convention).

Please take notice of the following legal constraints mandated by the international treaty framework:

1. Invalidation of Direct Mail Service: Mexico maintains an explicit, binding reservation and objection under Article 10 of the Hague Convention. Consequently, any attempt to execute service of process across borders via standard international postal channels, certified mail, or private commercial couriers is legally ineffective andvoids judicial jurisdiction.
2. Mandatory Central Authority Channeling: Service must be completedhrough the designated Central Authority for Mexico, which is the Ministry of Foregn Affairs (Secretaría de Relaciones Exteriores - SRE) located in Mexico City. Dcuments must be

sent via Form USM-94 for formal transmission and execution by an authorized Mexican judicial official.

3. Absolute Translation Mandate: Every document contained within the initial litigation package—including the Summons (Form AO 440), Verified Civil Complaint, Civil Cover Sheet (Form JS 44), and all accompanying exhibits—must be fully translated into Spanish. The translated text must be executed by a certified court translator to satisfy the strict due process rules of the receiving sovereign nation. [

Failure to adhere strictly to these international protocols risks automatic dismissal of the filing and voids subsequent attempts to seek enforcement of a United States federal judgment inside Mexico.

Respectfully submitted,

Supreme Administrator, MAG HOLDINGS TRUST

Filer for Plaintif

**INTERNATIONAL PLAINTIFF ADDRESS FOR HAGUE. CONVENTION DOCUMENTATION**

To ensure the judicial record remains accurate, all cross-border legal notifications, return certificates of service, and official Central Authority tracking records must list the plaintiff's administrative operations address in Mexico exactly as follows:

Michelle Artice Gardner.
Lerdo de Tejada Reforma Santa Monica.
California, Mexico

Mariano Escobedo #11.
C.P. 22704 Rosarito, Ba

To**I. Plaintiffs**

MAG HOLDINGS TRUST

**II. Defendants**

QUALITY LOAN SERVICE CORPORATION, SELECT PORTFOLIO SERVICING, INC., and UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

**III. County of Residence of First Listed Party**

Plaintiff County of Residence: International / Mexico (Out of State)

Defendant County of Residence: San Diego County, CA

**IV. Basis of Jurisdiction**

Federal Question (U.S. Government Not a Party) or Diversity (depending on secondary state claims)

**V. Citizenship of Principal Parties**

Citizen of Another State or Foreign Country (Plaintiff)

Incorporated or Principal Place of Business in This State (Defendants)

**VI. Nature of Suit**

Code: 370 (Other Fraud) or Code: 220 (Foreclosure / Real Property)

**VII. Cause of Action**

28 U.S.C. Section 1331 (Federal Question Lawsuit addressing cross-border security trust assets

and violations of security clearing procedures)

**VIII. Requested in Complaint**

Demand: **$138,000,000,000.00 USD**

Class Action: No

Jury Demand: Yes

---

VERIFIED COMPLAINT AD DAMNUM CLAUSE (AMENDED)

PRAYER FOR RELIEF

Wherefore, Plaintiff MAG HOLDINGS TRUST respectfully requests that this Honorable Court enter judgment in its favor and against Defendants, granting the following relief:

1.
2. An order quieting title to the subject real property parcels and infrastructure interests in favor of Plaintiff;
3. A temporary restraining order and preliminary injunction freezing all non-judicial foreclosure proceedings, trustee sales, and asset transfers during the pendency of this action;

4. Compensatory, consequential, and statutory damages arising from the unauthorized execution of security instruments and clearing violations in the amount of **$138,000,000,000.00 USD** (One Hundred Thirty-Eight Billion Dollars and Zero Cents);
5. Pre-judgment and post-judgment interest at the maximum statutory rate; and
6. Such other and further relief as this Court deems just and proper.

MAG HOLDINGS TRUST ____________________ Date ____________